UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SOUTHWESTERN BELL )
TELEPHONE, L.P., et al., )
 )
        Plaintiffs, )
 )
   vs. )   No. 4:04-CV-1303 (CEJ)
 )
VARTEC TELECOM, INC., et al., )
 )
        Defendants. )

## MEMORANDUM AND ORDER

    This matter is before the Court on the motion of defendants UniPoint Holdings, Inc., UniPoint Services, Inc., and UniPoint Enhanced Services, Inc., to dismiss for failure to state a claim or in deference to the primary jurisdiction of the Federal Communications Commission (FCC). Plaintiffs oppose the motion and the issues are fully briefed.

    Plaintiffs in this action are ten Local Exchange Carriers[1] (LECs) that provide telecommunication services in different regions of the country. They seek to recover federal and state tariffs for long-distance telephone calls transmitted by defendants.[2] Plaintiffs allege that defendant VarTec Telecom, Inc. (VarTec) is an interexchange carrier (IXC) that provides long-distance telephone service, using "dial-around" or "10-10" technology. The

---

[1] Southwestern Bell Telephone, L.P., Pacific Bell Telephone Company, Nevada Bell Telephone Company, Michigan Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Ohio Bell Telephone Company, Wisconsin Bell, Inc., The Southern New England Bell, Inc., and Woodbury Telephone Company.

[2] Plaintiffs also bring claims for unjust enrichment, fraud, and civil conspiracy.

UniPoint[3] and Transcom[4] defendants are Least Cost Routers (LCRs) with whom VarTec contracts to transmit long-distance telephone traffic in Internet Protocol (IP) format. Defendants VarTec and Transcom Enhanced Services filed bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Texas. Plaintiffs' claims against these defendants are subject to the automatic stay under 11 U.S.C. § 362.

I.  **Background**

A complex regulatory scheme governs the transmission of long-distance telephone calls. LECs provide facilities, known as Feature Group D trunk facilities, to which IXCs deliver long-distance calls for delivery to the LECs' customers. The IXCs pay the LECs terminating access charges, at rates determined by whether the call is an intrastate or interstate call. The LECs maintain separate facilities for local calls, which are compensated at a lower rate. Local calls are routed through separate facilities that lack the capacity to detect and measure long-distance calls. See Petition for Declaratory Ruling that At&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges, 2004 WL 856557, 19 F.C.C.R. 7457, at ¶ 11 (Order April 21, 2004) (AT&T Access Charge Order) (noting that AT&T's IP telephone calls are terminated through LECs' local business lines rather than Feature Group D Trunks). Plaintiffs allege that defendants improperly deliver

---

[3]UniPoint Enhanced Services, Inc. (d/b/a PointOne), UniPoint Services, Inc., and UniPoint Holdings, Inc.

[4]Transcom Communications, Inc., and Transcom Holdings, LLC.

interexchange calls in IP format to the facilities for local calls in order to avoid paying terminating access charges.

In addition to providing for different compensation regimes, the regulations also distinguish between providers of "telecommunication services"[5] and "enhanced" or "information services."[6] See National Cable & Telecommunications Ass'n v. Brand X Internet Services, 125 S. Ct. 2688, 2696 (June 27, 2005) (discussing telecommunications and information services). To date, the FCC has declined to treat providers of enhanced or information services as common carriers, in order to promote growth in the field. Information service providers are thus exempt from tariffs governing access charges. AT&T Access Charge Order at ¶ 4; see also Brand X at 2696.

The introduction of IP telephony, including Voice Over Internet Protocol (VoIP) technology, blurs the distinction between telecommunication and enhanced services. VoIP technologies enable

---

[5]The Telecommunications Act of 1996 defines "telecommunications" as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in form or content of the information as sent and received."  47 U.S.C. § 153(43).  A "telecommunications service" is "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."  47 U.S.C. § 153(46).

[6]An enhanced service "involves some degree of data processing that changes the form or content of . . . transmitted information."  Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges, 2004 WL 856557, 19 F.C.C.R. 7457, at ¶ 4 (Order April 21, 2004). The statute defines "information service" as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications."  47 U.S.C. § 153(20).

real-time delivery of voice and voice-based applications.  AT&T Access Charge Order at ¶ 3.  When VoIP is used, a communication traverses at least a portion of its path in an IP packet format using IP technology and IP networks.  Id.  VoIP can be transmitted over the public Internet or over private IP networks, using a variety of media.  Id.

On April 21, 2004, the FCC addressed the petition of telecommunications provider AT&T.  AT&T sought a declaratory ruling that its VoIP transmission of telephone calls over its Internet system was exempt from access charges.  The FCC described the service under consideration as:

> an interexchange service that: (1) uses ordinary customer premises equipment (CPE) with no enhanced functionality; (2) originates and terminates on the public switched telephone network (PTSN); and (3) undergoes no net protocol conversion[7] and provides no enhanced functionality to end users due to the provider's use of IP technology.

Id. at ¶ 1.  The FCC's consideration was limited to those VoIP services employing "1+ dialing."  Id. at ¶ 15 n.58.

The FCC determined that AT&T's specific service was a telecommunications service, rather than an enhanced service, and was subject to the access charges.[8]  Id. at ¶ 12.  In order to

---

[7] No net protocol conversion occurs because the telephone transmissions begin and end as ordinary telephone calls.

[8] The FCC noted that it had recently adopted a Notice of Proposed Rulemaking concerning IP-enabled services.  Id. at ¶ 2.  In the interim, however, there was "significant evidence that similarly situated carriers may be interpreting [the] current rules differently" with "significant implications for competition."  Id.  The FCC stated that it adopted its ruling on this matter to provide clarity to the industry pending the outcome of the comprehensive rulemaking proceedings.  Id.

-4-

avoid placing AT&T at a competitive disadvantage, the FCC ruled that all interexchange carriers providing IP telephony are required to pay access charges for calls that "begin on the PSTN, undergo no net protocol conversion, and terminate on the PSTN." Id. at ¶ 18. This rule applies whether the interexchange carrier provides its own IP voice services or contracts with another provider to do so. Id.

**II. Discussion**

According to the allegations in the complaint, when a VarTec long-distance customer makes an interstate call, the call originates on an LEC's network, is handed off to VarTec on the PSTN, is converted to, and transmitted in, IP Format, is reconverted for transmission over the PSTN, and is returned to an LEC for delivery to the called party. The UniPoint and Transcom defendants, according to plaintiffs, provide the IP transmission of the telephone call. Plaintiffs allege that the service defendants provide is identical to that addressed in the FCC ruling and, thus, subject to access charges. The UniPoint defendants contend that only interexchange carriers are liable for access charges under the existing regulatory scheme, that the AT&T Access Charge Order did not alter this rule, and that plaintiffs fail to allege that UniPoint is an interexchange carrier.

Current FCC Rule 69 regulates access charges. 47 C.F.R. Part 69. There are two classes of access charges: "end user charges," which are not at issue in this dispute, and "carriers' carrier charges". 47 C.F.R. § 69.4(a) and (b). A "carriers' carrier" is

-5-

a company that owns a telecommunications infrastructure and sells access to it on a wholesale basis. In re Flag Telecom Holdings, Ltd. Securities Litigation, 308 F. Supp. 2d 249, 252 (S.D.N.Y. 2004). Section 69.5(b) states that "carriers' carrier charges shall be computed and assessed upon all interexchange carriers that use local exchange switching facilities for the provision of interstate or foreign telecommunications services." (emphasis added).

Plaintiffs do not contend that they are entitled to collect access charges from the LCR defendants under Rule 69.5. They argue, rather, that because the defendants acting together provide a service identical that provided by AT&T alone, the defendants are liable for access charges, without regard to whether they are IXCs.

The FCC ruled in the AT&T Access Charge Order that,

> when a provider of IP-enabled voice services contracts with an interexchange carrier to deliver interexchange calls that begin on the PSTN, undergo no net protocol conversion, and terminate on the PSTN, the interexchange carrier is obligated to pay terminating access charges. Our analysis in this order applies to services that meet these criteria regardless of whether only one interexchange carrier uses IP transport or instead multiple service providers are involved in providing IP transport.

Id. at ¶ 19 (emphasis added). Under this language, plaintiffs have stated a claim against defendant VarTec, whom plaintiffs clearly allege to be an interexchange carrier providing a service covered by the order. Nothing in the AT&T Access Charge Order extends the obligation to pay terminating access charges to non-IXCs, however, and plaintiffs do not allege that the UniPoint defendants are an IXC.

-6-

Finally, an entity's involvement in the transmission of IP-enabled interexchange calls does not automatically subject it to terminating access charges. Id. at ¶ 23 n. 92 ("to the extent that terminating LECs seek application of access charges, these charges should be assessed against interexchange carriers and not against any intermediate LECs that may hand off the traffic to the terminating LECs, unless the terms of any relevant . . . tariffs provide otherwise.")

The UniPoint defendants ask the Court to dismiss plaintiffs' claims for failure to state a basis for relief or to defer to the primary jurisdiction of the FCC. They note that the FCC has ongoing proceedings concerning VoIP. See In the Matter of IP-Enabled Services, FCC No. 04-28 (Notice of Proposed Rulemaking, March 10, 2004).[9] Among the issues upon which the FCC is seeking comment are (1) "the extent to which access charges should apply to VoIP and other IP-enabled services," and (2) how to classify the providers of these services. Id. at ¶ 61.

Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making. Access Telecommunications v. Southwestern Bell Telephone Co., 137 F.3d 605, 608 (8th Cir. 1998). The doctrine "applies where enforcement of a claim originally cognizable in a court requires the resolution of issues which, under a regulatory scheme, have been placed within the special expertise and competence of an administrative agency."

---

The FCC Notice can be found at:
http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-04-28A1.pdf

Southwestern Bell Tel. Co. v. Allnet Comm. Servs., Inc., 789 F.Supp 302, 304 (E.D. Mo. 1992). The purposes of the doctrine are to: (1) ensure desirable uniformity in determinations of certain administrative questions, and (2) promote resort to agency experience and expertise where the court is presented with a question outside its conventional expertise. United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64 (1956).

Plaintiffs argue that deferral to the FCC is inappropriate because this matter concerns tariff enforcement, an issue beyond the authority of the FCC. See Access Charge Order at ¶ 23 n.93 ("Under sections 206-209 of the Act, the Commission does not act as a collection agent for carriers with respect to unpaid tariff charges."). However, in order to determine whether the UniPoint defendants are obligated to pay the tariffs in the first instance, the Court would have to determine either that the UniPoint defendants are IXCs or that access charges may be assessed against entities other than IXCs. The first is a technical determination far beyond the Court's expertise; the second is a policy determination currently under review by the FCC. The Court's entrance into these determinations would create a risk of inconsistent results among courts and with the Commission. The FCC's ongoing Rulemaking proceedings concerning VoIP and other IP-enabled services make deferral particularly appropriate in this instance. And, because the FCC may determine that LCRs are interexchange carriers in the transmission of IP telephony, dismissal for failure to state a claim is inappropriate.

Having determined that deferral on plaintiffs' claims for access charges is appropriate, the Court must decide whether to dismiss the action without prejudice or stay the matter while the parties resolve the issue before the FCC. Neither party has requested a stay and the Court will thus dismiss the UniPoint defendants. Plaintiffs' allegations with regard to the Transcom defendants[10] are identical to those regarding the UniPoint defendants and thus plaintiffs' claims against these defendants will be dismissed as well. Because of the bankruptcy proceedings involving the remaining defendants, VarTec and Transcom Enhanced Services, the Court shall direct the Clerk of Court to administratively close the case as to those defendants.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of UniPoint Holdings, Inc., UniPoint Services, Inc., and UniPoint Enhanced Services, Inc., to dismiss for failure to state a claim or in deference to the primary jurisdiction of the Federal Communications Commission [#57] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that plaintiffs' claims against the UniPoint defendants are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that plaintiffs' claims against defendants Transcom Holdings, LLC, and Transcom Communications, Inc., are **dismissed without prejudice**.

---

[10]Transcom Holdings, LLC, and Transcom Communications, Inc.

**IT IS FURTHER ORDERED** that the motion of the UniPoint defendants to transfer the case to the Northern District of Texas [#60] is **denied as moot.**

**IT IS FURTHER ORDERED** that the motion of Transcom Holding, LLC, to dismiss for lack of jurisdiction [#63] is **denied as moot.**

**IT IS FURTHER ORDERED** that the motion of Transcom Communications, Inc., to dismiss for failure to state a claim [#85] is **denied as moot.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case as to defendants VarTec Telecom, Inc. and Transcom Enhanced Services, LLC. The Court shall retain jurisdiction to permit a party to move to re-open the case. Any motion to re-open the case must be filed not later than thirty (30) days after conclusion of the bankruptcy proceedings.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of August, 2005.